**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 23-157-01** |
| **v.** | **23-157-02** |
| **AL-ASHRAF KHALIL** | |
| **ISAAM JAGHAMA** | |
| **Defendants.** | |

## <u>MEMORANDUM OPINION</u>

Rufe, J.                                                                                   **November 28, 2023**

Defendants Al-Ashraf Khalil and Isaam Jaghama were indicted after a fatal fire at 300 West Indiana Avenue in North Philadelphia. The building collapsed, killing Philadelphia Fire Department Lieutenant Sean Williamson and injuring five others. Khalil, the owner of the building, was charged with arson, conspiracy to commit arson, use of fire to commit a felony, and wire fraud. Jaghama, an alleged accomplice, was charged with arson and conspiracy to commit arson.

Khalil has filed a Motion to Dismiss the arson and conspiracy counts, which Jaghama joins.[1] The government has filed a Motion in Limine to exclude what it views as improper defenses under the federal arson statute.[2] Both motions require the Court to resolve a matter of first impression in this Circuit: the applicable causation standard in the sentence enhancement provisions of the federal arson statute, 18 U.S.C. § 844(i). For the reasons below, both motions will be denied.

---

[1] Def.'s Mot. Dismiss [Doc. No. 38]; Ord., Nov. 28, 2023.

[2] Gov't Mot. Lim. to Exclude Improper Defenses [Doc. No. 71]; 18 U.S.C. § 844(i).

## I.     BACKGROUND

### A.  Factual Background

On June 18, 2022, between 1:30 and 1:53 a.m., a three-story structure at 300 West Indiana Avenue caught fire. It was a mixed-use building, with a restaurant on the ground floor (Star Pizza, Fish, and Chicken) and residential apartments on the second and third floors. First responders arrived at the scene within minutes after calls were placed to 911, including members of the Philadelphia Fire Department ("PFD"), Philadelphia Fire Marshal's Office, Philadelphia Police Department, and Philadelphia Department of Licenses and Inspections ("L&I").

By approximately 2:24 a.m., the main fire was suppressed. The PFD's firefighters then engaged in a process called "overhaul," which involves searching for and extinguishing pockets of fire that may remain undetected. As part of the overhaul process, firefighters opened walls and ceilings to locate smaller fires or pockets of embers. At approximately 3:23 a.m., when five firefighters and one L&I inspector were still inside, the building collapsed. The L&I inspector and four of the firefighters were injured—some critically—but were rescued and transported to Temple Hospital. Tragically, however, Lt. Sean Williamson was buried under the rubble. He was pronounced dead at the scene at 6:45 a.m.

In the days after the fire, the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") became involved in the investigation. ATF hired an independent engineering firm to examine how and why the building collapsed. The firm produced a report that identified several contributing factors to the building's collapse, including the age of the building, pre-existing structural issues and repairs, and additional stress from the weight of the

water used to douse the fire and the opening of walls to track the fire's spread.[3]

Meanwhile, ATF Special Agents and Task Force Officers took steps to investigate the cause of the fire. The investigators recovered video footage from a neighboring business, which showed two masked individuals entering and exiting 300 West Indiana Avenue minutes before the fire began. ATF Special Agents also interviewed dozens of individuals, including two voluntary interviews of Khalil, the owner of the building. Findings from the investigation led to the government's present allegations that Khalil and Jaghama were the two masked individuals captured on video, and that Khalil planned and intentionally set the fire to collect on an insurance policy worth approximately $477,300.[4] According to the government, Khalil executed paperwork later on the day of the fire authorizing his agents to file a proof-of-loss claim.[5]

### B. Procedural Background

On April 13, 2023, a grand jury in the Eastern District of Pennsylvania returned a four-count Indictment,[6] which charged Khalil and Jaghama with conspiracy to commit malicious damage by means of fire of a building used in interstate commerce in violation of 18 U.S.C. § 844(n) ("Count One"), and malicious damage by means of fire of a building used in interstate commerce and aiding and abetting in violation of 18 U.S.C. §§ 844(i), 2 ("Count Two"). Khalil was also charged with wire fraud in violation of 18 U.S.C. § 1343 ("Count Three") and use of fire to commit a felony in violation of 18 U.S.C. § 844(h) ("Count Four").

On May 2, 2023, Khalil filed a Motion to Dismiss Counts One and Two of the

---

[3] Gov't Resp. Opp'n Def.'s Mot. Dismiss at 5 [Doc. No. 63].

[4] Superseding Indictment, Aug. 17, 2023, at 2, 5, 7 [Doc. No. 62].

[5] *Id.*

[6] Indictment, Apr. 13, 2023 [Doc. No. 20].

Indictment, arguing that the Indictment failed to specify facts that satisfy all the elements of the crimes alleged under 18 U.S.C. §§ 844(n) and 844(i).[7]

On August 17, 2023, the grand jury returned a Superseding Indictment, which added clarifying language but did not add new defendants or charges.[8] The pertinent revisions to the Superseding Indictment, as compared to the initial Indictment, are shown below:[9]

**OVERT ACTS**

[…]

7.      On or about June 18, 2022, at approximately 1:30 a.m., defendants AL-ASHRAF KHALIL and ISAAM JAGHAMA entered 300 West Indiana Avenue through the sidewalk Bilco doors and started a fire inside the business area on the ground floor of Star Pizza, Fish, and Chicken. At approximately 1:48 a.m., after starting the fire, defendants KHALIL and ISAAM JAGHAMA exited the building, and walked away from the building. <u>Shortly thereafter, 911 calls reporting the fire were received. As a direct and proximate cause of the setting of the fire by defendants KHALIL and JAGHAMA, members of the Philadelphia Fire Department, the Philadelphia Fire Marshal's Office, the Philadelphia Police Department, and the Philadelphia Department of Licenses and Inspections reported to 300 W Indiana Avenue.</u>

[…]

10.     Defendant AL-ASHRAF KHALIL and Person 1 then went to the fire scene. Shortly thereafter, the building collapsed, ~~killing Philadelphia Fire Department Lieutenant Sean Williamson, and injuring five other individuals.~~ <u>and Philadelphia Fire Department Lieutenant Sean Williamson was killed as a direct and proximate cause of the conduct of defendants KHALIL and JAGHAMA, namely setting fire inside 300 W Indiana Avenue. Five other first responders, four members of the Philadelphia Fire Department, and one member of the Philadelphia Department of Licenses and Inspections, were inside 300 W Indiana Avenue as a direct and proximate cause of the conduct of defendants KHALIL and JAGHAMA in setting the fire, and were injured as a direct and proximate result of the defendants' conduct.</u>

[. . .]

---

[7] Def.'s Mot. Dismiss [Doc. No. 38].

[8] Superseding Indictment, Aug. 17, 2023 [Doc. No. 62].

[9] New language has been marked with underlined text. Removed language has been marked with strikethroughs. These markings are not in the Superseding Indictment itself.

## COUNT TWO

[. . .]

2.        On or about June 18, 2022, in Philadelphia, in the Eastern District of Pennsylvania, defendants

**AL-ASHRAF KHALIL** and
**ISAAM JAGHAMA**

maliciously damaged and destroyed, and aided and abetted the damage and destruction of, by means of fire, a building used in interstate commerce and in activities affecting interstate commerce, namely, 300 West Indiana Avenue, Philadelphia, Pennsylvania, <u>and as a direct and proximate cause of the conduct of defendants KHALIL and JAGHAMA, Philadelphia Fire Department Lieutenant Sean Williamson was killed, and five other individuals were injured.</u>[10]

The day after the grand jury returned the Superseding Indictment, the government filed its response to Khalil's Motion to Dismiss.[11] Additionally, on the same date, the government filed a Motion in Limine to exclude the arguments Khalil previewed in his Motion to Dismiss regarding the unforeseeability of the building's collapse and alleged negligence of FPD and L&I personnel that contributed to their injuries.[12] Jaghama and Khalil filed separate responses to the government's motion, and the government filed a reply.[13] On October 31, 2023, the Court held a hearing on all of the pending pretrial motions.[14] The Court addresses here Khalil's Motion to Dismiss and the government's Motion in Limine.

---

[10] *Id.* at 4–6 (modifications added, as compared to Indictment, Apr. 13, 2023 [Doc. No. 20]).

[11] Gov't Resp. Opp'n Def.'s Mot. Dismiss [Doc. No. 63].

[12] Gov't Mot. Lim. to Exclude Improper Defenses [Doc. No. 71].

[13] Def. Jaghama's Resp. Opp'n Gov't Mot. Lim. [Doc. No. 77]; Def. Khalil's Resp. Opp'n Gov't Mot. Lim. [Doc. No. 89]; Gov't Reply Supp. Mot. Lim. [Doc. No. 90].

[14] Notice of Hr'g [Doc. No. 86]; Notice of Hr'g [Doc. No. 87].

## II.     LEGAL STANDARDS

### A.  Rule 12 Motions to Dismiss

Federal Rule of Criminal Procedure 7(c)(1) requires an indictment to contain "a plain, concise, and definite written statement of the essential facts constituting the offense charged[.]"[15] To be facially sufficient, "an indictment must contain all the elements of the charged offense to ensure that a grand jury found them present and to fairly inform a defendant of the charge against which he must defend, as well as enable him to plead an acquittal or conviction in bar of future prosecutions for the same offense."[16] Put differently, "an indictment is facially sufficient if it (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution."[17]

Rule 12(b)(3)(B) permits criminal defendants to contest the sufficiency of an indictment if it contains "a defect," including "failure to state an offense."[18] There are at least two avenues through which a defendant may argue that an indictment fails to state an offense. First, a defendant may contend that an indictment violates the first of the three requirements above because it "fails to charge an essential element of the crime."[19] Second, a defendant may contend that an indictment fails the second and third requirements because "the specific facts alleged fall

---

[15] Fed. R. Crim. P. 7(c)(1).

[16] *United States v. Stevenson*, 832 F.3d 412, 423 (3d Cir. 2016) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)) (quotation marks and modifications omitted).

[17] *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) (quotation marks and citation omitted), *abrogated on other grounds by Rehaif v. United States*, 139 S. Ct. 2191 (2019).

[18] Fed. R. Crim. P. 12(b)(3)(B).

[19] *United States v. Stock*, 728 F.3d 287, 292 (3d Cir. 2013) (quoting *Huet*, 665 F.3d at 595).

beyond the scope of the relevant criminal statute, as a matter of statutory interpretation," given that "an indictment that merely recites in general terms the essential elements of the offense" cannot be said to sufficiently apprise a defendant of the charges or explain the extent to which he may contest a subsequent prosecution for the same conduct.[20]

Courts evaluating a motion to dismiss "must accept as true the factual allegations set forth in the indictment."[21] A ruling on a motion to dismiss "is not . . . a permissible vehicle for addressing the sufficiency of the government's evidence."[22] Additionally, as a general matter, a court's review of a motion to dismiss an indictment "is a narrow, limited analysis geared only towards ensuring that legally deficient charges do not go to a jury."[23]

### B. Pretrial Exclusion of Defense Arguments

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment . . . or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, . . . the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'"[24] That includes "the right to put before a jury evidence that might influence the determination of guilt."[25] Nonetheless, "[t]he accused does not have an unfettered right to offer

---

[20] *Stock*, 728 F.3d at 292 (quoting *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002)) (quotation marks and modifications omitted).

[21] *Huet*, 665 F.3d at 595 (citing *United States v. Sampson*, 371 U.S. 75, 78–89 (1962)).

[22] *United States v. Bergrin*, 650 F.3d 257, 265 (3d Cir. 2011) (quoting *United States v. DeLaurentis*, 230 F.3d 659, 660–61 (3d Cir. 2000)) (quotation marks omitted).

[23] *Bergrin*, 650 F.3d at 268.

[24] *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)).

[25] *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987).

testimony that is . . . inadmissible under standard rules of evidence,"[26] and district courts retain "substantial discretion to exclude improper defense evidence[.]"[27]

Acknowledging the importance of well-established evidence rules, the Supreme Court has held that "the Constitution permits judges to exclude evidence that is . . . only marginally relevant or poses an undue risk of harassment, prejudice, or confusion of the issues."[28] Those principles are embodied in Federal Rule of Evidence 402, which provides that relevant evidence is admissible (subject to constitutional or statutory limitations) and irrelevant evidence is not admissible, and Rule 403, which permits courts to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury[.]"[29] With respect to relevance under Rule 402, "[t]he burden of showing that proffered testimony [or evidence] is offered to negate . . . [an] element of a crime and not in support of some improper defense theory falls squarely on the defendant."[30]

## III.   DISCUSSION

Defendant Khalil moves to dismiss two counts charging violations of 18 U.S.C. §§ 844(n) and (i). Subsection (n) prohibits conspiracy to commit an underlying offense within § 844. Subsection (i), the substantive arson provision at issue here, contains two parts. The first half of the subsection relates to the primary arson elements:

> Whoever maliciously damages or destroys, or attempts to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal

---

[26] *Taylor v. Illinois*, 484 U.S. 400, 410 (1988).

[27] *United States v. Lynch*, 903 F.3d 1061, 1071 (9th Cir. 2018) (citing *Holmes v. South Carolina*, 547 U.S. 319, 326–27 (2006)).

[28] *Holmes*, 547 U.S. at 326–27 (quotation marks, modifications, and citations omitted).

[29] Fed. R. Evid. 402, 403.

[30] *See United States v. Andrews*, 811 F. Supp. 2d 1158, 1169 (E.D. Pa. 2011) (quoting *United States v. Baxt*, 74 F. Supp. 2d 436, 441 (D.N.J. 1999)) (quotation marks and modifications omitted).

> property used in interstate or foreign commerce or in any activity affecting
> interstate or foreign commerce shall be imprisoned for not less than 5 years and not
> more than 20 years, fined under this title, or both; [. . .][31]

The second half of subsection (i) provides avenues for minimum and maximum sentence

enhancements, tied to whether death or injury resulted from the conduct:

> [. . .] and if <u>personal injury results</u> to any person, including any public safety officer
> performing duties as a direct or proximate result of conduct prohibited by this
> subsection, shall be imprisoned for not less than 7 years and not more than 40 years,
> fined under this title, or both; and if <u>death results to any person, including any public</u>
> <u>safety officer performing duties as a direct or proximate result of conduct prohibited</u>
> <u>by this subsection</u>, shall also be subject to imprisonment for any term of years, or
> to the death penalty or to life imprisonment.[32]

In moving to dismiss, Khalil explicitly admits "that he ignited a fire that burned this

building down[.]"[33] Instead of contesting his guilt under the primary arson elements, Khalil

hones in on the sentence enhancements, raising two primary arguments: first, that the

government's pleadings do not adequately allege that Lt. Williamson's death was the "proximate

result" of Khalil's conduct; and second, even if the case proceeds to trial, that Khalil should be

permitted to introduce evidence that the building's collapse, the first responders' injuries, and

Lt. Williamson's death were unforeseeable. The government has moved separately in limine to

exclude these foreseeability arguments as irrelevant and prejudicial because, it argues,

(a) foreseeability is not an element of the federal arson statute, and (b) any arguments regarding

the alleged negligence of the firefighters have no bearing on Defendants' guilt, would confuse

the issues, and would mislead the jury by leading to a mini-trial within the trial. The key dispute

---

[31] 18 U.S.C. § 844(i).

[32] *Id.* (emphasis added).

[33] Def.'s Mot. Dismiss at 3 [Doc. No. 38].

across both motions can be reduced to a single question: What does "direct or proximate result" mean in the context of § 844(i)?

That overarching question leads to several related questions. First, did Congress intend for "direct or proximate result" to modify (1) "death,"[34] or (2) "any public safety officer performing duties"? In other words, did Congress intend to permit the death penalty or a life sentence if a person's *death* was a direct or proximate result of a maliciously set fire? Or does that enhancement apply merely when a death "results," including, by way of example, when firefighters *arrive on scene* as a "direct or proximate result" of a maliciously set fire?

Second, assuming that Congress intended "direct or proximate result" to modify the death of a person, what standard of causation applies under a "direct or proximate result" framework? According to Khalil, the Court should apply common law principles of proximate causation, which attach liability only where events (here, death or injury to first responders) are a reasonably foreseeable result of a defendant's conduct (here, Khalil's setting of the fire). The government argues that a "proximate result" requirement requires the government to show only that Khalil's conduct was "a substantial factor" in causing the firefighters' injuries and Lt. Williamson's death.[35]

Third, as a procedural matter, how does the causation component fit within the government's burden at trial in proving that Defendants violated § 844(i), and the Defendants' concomitant right to assert arguments and present evidence in their defense? The government

---

[34] These questions apply equally to the "if personal injury results" prong of the sentence enhancement provisions in § 844(i), but for the sake of analysis, the Court will focus primarily on the "if death results" clause. Both clauses are at issue in this case.

[35] Hr'g Tr., Oct. 31, 2023, at 71–72, 75, 84 [Doc. No. 93] (citing *United States v. Crandon*, 173 F.3d 122, 126 (3d Cir. 1999)).

initially suggested that Khalil's arguments about the firefighters' alleged negligence "are nothing more than sentencing arguments that are not appropriate to be presented to a jury."[36] The government then adjusted its position, conceding that the enhancement provisions are an element of the offense, meaning a jury is required to find beyond a reasonable doubt that the death and injuries "resulted" from Defendants' conduct.[37] But the government continues to maintain that *foreseeability* is not an element of the statute.[38] Therefore, the government argues, "[o]nly the defendants' conduct is at issue" in this case, "not the actions of first responders performing their duties," and any proposed evidence suggesting that the first responders were negligent should be excluded as irrelevant and prejudicial.[39]

The Court begins with a review of relevant guidance from the Supreme Court, the Third Circuit, and other courts that have considered these issues.

### A.  *Burrage* and *Paroline*: Causation Standards for "Death Results" Provisions

Although the Supreme Court has not directly addressed the causation standard in § 844(i), it has provided relevant guidance regarding "death results" provisions generally.

In *Burrage v. United States*,[40] the Court granted certiorari on two questions under the Controlled Substances Act: "Whether the defendant may be convicted under the 'death results' provision (1) when the use of the controlled substance was a 'contributing cause' of the death,

---

[36] Gov't Resp. Opp'n Def.'s Mot. Dismiss at 1 [Doc. No. 63].

[37] Hr'g Tr., Oct. 31, 2023, at 85–86. The government proposes, and Defendants agree, that the enhancement provisions may be addressed via special interrogatories in the initial verdict form submitted to the jury. *Id.* at 86, 89.

[38] Gov't Mot. Lim. to Exclude Improper Defenses at 8 [Doc. No. 71].

[39] *Id.* at 13.

[40] *Burrage v. United States*, 571 U.S. 204 (2014).

and (2) without separately instructing the jury that it must decide whether the victim's death by drug overdose was a foreseeable result of the defendant's drug-trafficking offense."[41]

The Court first addressed a threshold matter: It reaffirmed its prior rulings in *Apprendi v. New Jersey*[42] and *Alleyne v. United States*,[43] holding that "[b]ecause the 'death results enhancement [in the Controlled Substances Act] increased the minimum and maximum sentences to which [the defendant] was exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt."[44]

The Court then turned to the causation analysis. With respect to actual causation, the Court rejected the government's proposed "contributing cause" standard, holding that "at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision . . . unless such use is a but-for cause of the death or injury."[45] The Court reasoned that "[t]he Controlled Substances Act does not define the phrase 'results from,'" therefore the terminology should be given "its ordinary meaning," which the Court determined includes, *at a minimum*, "actual causality."[46] The Court did not reach the foreseeability question, determining that the case could be resolved solely on but-for causation grounds. However, with respect to causation frameworks generally in criminal statutes, it commented:

---

[41] *Id.* at 208.

[42] 530 U.S. 466, 490 (2000).

[43] 570 U.S. 99 (2013).

[44] *Burrage*, 571 U.S. at 210 (citing *Alleyne*, 570 U.S. at 114–16; *Apprendi*, 530 U.S. at 490).

[45] *Id.* at 218–19.

[46] *Id.* at 210–11 (characterizing the Model Penal Code's formulation of causation, which imposed a "but for" standard, as representing "the *minimum* requirement for a finding of causation when a crime is defined in terms of conduct causing a particular result" (emphasis in original)).

The law has long considered causation a hybrid concept, consisting of two constituent parts: actual cause and legal cause. When a crime requires "not merely conduct but also a specified result of conduct," a defendant generally may not be convicted unless his conduct is "both (1) the actual cause, and (2) the 'legal' cause (often called the 'proximate cause') of the result."[47]

In *Paroline v. United States*,[48] decided three months after *Burrage*, the Supreme Court analyzed 18 U.S.C. § 2259, a section within the Violence Against Women Act of 1994 which requires district courts to award restitution for certain federal criminal offenses such as possession of child pornography. The Court addressed the question of "what causal relationship must be established between the defendant's conduct"—after the defendant pled guilty to possessing images of child pornography—"and a victim's losses," various categories of which were defined separately in the statute.[49]

The *Paroline* Court first held that § 2259 clearly imposed at least some causation standard, as the statute defined "a victim" as "the individual harmed *as a result of* a commission of a crime under this chapter."[50] The Court then read a proximate-cause requirement into the provision, based on an explicit textual clue: "The statute enumerate[d] six categories of covered losses," and the final, catch-all category was defined as "any other losses suffered by the victim *as a proximate result* of the offense."[51] The Court held, as a matter of statutory construction and "common sense," that Congress must have intended the "proximate result" language to apply to

---

[47] *Id.* at 210 (citing H. Hart & A. Honore, Causation in the Law 104 (1959); ALI, Model Penal Code § 2.3, at 25 (1985); quoting 1 W. LaFave, Substantive Criminal Law § 6.4(a) p. 464–66 (2d ed. 2003)).

[48] *Paroline v. United States*, 572 U.S. 434 (2014).

[49] *Id.* at 439.

[50] *Id.* at 445 (quoting § 2259(c)) (emphasis added) (quotation marks omitted).

[51] *Id.* at 446 (emphasis added) (quotation marks and citation omitted).

*all* categories of losses in § 2259. It therefore held that the statute did not require restitution "for losses caused only in a remote sense."[52]

Notably, the Court commented that "[e]ven if § 2259 made no express reference to proximate causation, the Court might well hold that a showing of proximate cause was required," because "[p]roximate cause is a standard aspect of causation *in criminal law* and the law of torts."[53] It observed that, "[g]iven proximate cause's traditional role in causation analysis, this Court has more than once found a proximate-cause requirement built into a statute that did not expressly impose one."[54]

Viewed together, the *Burrage* and *Paroline* decisions endorse a set of useful guiding principles: (1) where, as here, a "death results" enhancement increases the minimum and maximum sentences to which a defendant is exposed, "it is an element that must be submitted to the jury and found beyond a reasonable doubt";[55] (2) as a general matter, in both common-law tort and criminal cases, the long-held view is that causation is a "hybrid concept," requiring both actual and proximate cause;[56] (3) when a penalty enhancement provision includes "results" language without a statutory definition, there is an established floor of actual, but-for causation, although, if appropriate, courts may find (and have often found) an implied proximate causation

---

[52] *Id.* at 449. Congress subsequently passed the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. 115–299 (2018), which, among other things, amended § 2259 to move the "proximate result" language earlier in the definitions section, thereby removing any ambiguity as to whether a proximate causation standard applies to each category of victim losses eligible for restitution under the statute.

[53] *Paroline*, 572 U.S. at 446 (emphasis added).

[54] *Id.* (citing cases).

[55] *Burrage*, 571 U.S. at 210 (citing *Alleyne v. United States*, 570 U.S. 99, 114–16 (2013); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

[56] *Burrage*, 571 U.S. at 210 (citing H. Hart & A. Honore, Causation in the Law 104 (1959)); *see also Paroline*, 572 U.S. at 446 ("[P]roximate cause is a standard aspect of causation in criminal law and the law of torts.") (citing 1 Wayne R. LaFave, Substantive Criminal Law § 6.4(a), at 464–66 (2d ed. 2003); W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 41, at 263 (5th ed. 1984)).

requirement as well;[57] (4) when Congress has decided to use "results" language, without more, the ordinary meaning of that term indicates that a defendant's conduct, if not an independently sufficient cause of the death or injury that triggers the enhancement, must be a but-for cause rather than merely a "contributing cause";[58] and (5) explicit textual clues in a statute referencing a proximate causation element, even in an arguably limited sense, place a heavy thumb on the scale in favor of implying a proximate cause requirement.[59]

### B.  Third Circuit Precedent

#### 1.  *Third Circuit Consideration of 18 U.S.C. § 844(i)*

The government frequently refers to a non-precedential Third Circuit decision, *United States v. Minerd*,[60] which involved a pipe bomb that destroyed a townhouse and killed a tenant and her three-year-old daughter.[61] The government ascribes much significance to the *Minerd* panel's recitation of the elements of § 844(i), which—for purposes of deciding that case— included only the primary arson elements from the first half of subsection (i), but not the elements of the penalty enhancement provisions.[62] In the government's view, the *Minerd* court therefore eschewed any causation requirement as part of the government's burden in proving a § 844(i) violation.

The government stretches *Minerd* too far. As an initial matter, the *Minerd* decision

---

[57] *Burrage*, 571 U.S. at 210–11; *Paroline*, 572 U.S. at 446 ("Given proximate cause's traditional role in causation analysis, this Court has more than once found a proximate-cause requirement built into a statute that did not expressly impose one.") (citing cases).

[58] *Burrage*, 571 U.S. at 210–11.

[59] *See Paroline*, 572 U.S. at 449.

[60] *United States v. Minerd*, 112 F. App'x 841 (3d Cir. 2004) (not precedential).

[61] *See United States v. Minerd*, 299 F. App'x 110 (3d Cir. 2008) (providing additional facts).

[62] *See Minerd*, 112 F. App'x at 845.

predates the Supreme Court's decision in *Burrage* which, as explained above, reaffirmed the now-established rule that a provision which increases a defendant's sentencing exposure is an element that must be submitted to a jury.[63] Given clear guidance from the Supreme Court, this Court cannot interpret *Minerd* as obviating the government's established burden to prove to a jury, beyond a reasonable doubt, the facts necessary to apply the "death results" sentence enhancement under § 844(i).

Nor can *Minerd* be said to define the standard of causation that should be applied in this Circuit. Importantly, as Defendant Jaghama correctly argues, the defendant in *Minerd* did not raise on appeal the issue of whether his conduct caused the death of the building's tenant and her daughter. It is therefore unsurprising that the Third Circuit panel in that case did not discuss at any length the penalty enhancement provisions of § 844(i) or the causation requirement therein. Indeed, the Court is unaware of any Third Circuit decision to have directly addressed the issue. The Court therefore turns to decisions from the Third Circuit regarding analogous provisions, as well as persuasive authority from other circuit courts.

2.  *Third Circuit Consideration of Analogous Provisions*

i.  Interstate Stalking – 18 U.S.C. § 2261

Applying *Burrage* and *Paroline*, the Third Circuit has endorsed (in other contexts) the imposition of a proximate-cause requirement in criminal statutes—including common-law conceptions of foreseeability—even when such statutes do not contain explicit "proximate" language. In *United States v. Gonzalez*,[64] defendants appealed their convictions under federal

---

[63] *Burrage*, 571 U.S. at 210 (citing *Alleyne*, 570 U.S. at 114–16; *Apprendi*, 530 U.S. at 490).

[64] *United States v. Gonzalez*, 905 F.3d 165, 187–89 (3d Cir. 2018).

provisions prohibiting interstate stalking and cyberstalking.[65] The statutes include sentence enhancement provisions[66] allowing a life sentence "if death of the victim results;" up to 20 years "if permanent disfigurement or life threatening bodily injury to the victim results;" and up to 10 years "if serious bodily injury to the victim results or if the offender uses a dangerous weapon during the offense."[67] These provisions do not separately define the word "results."

Addressing a matter of first impression in the Third Circuit, the district court in *Gonzalez* crafted a jury instruction stating that the enhancement in 18 U.S.C. § 2261(b)(1) required the jury to find both actual, but-for causation, and proximate causation, *i.e.*, that the victim's death was "the result of the particular offense in a *real and meaningful way*," including "consideration of whether her death was a *reasonably foreseeable* result of the particular offense and whether her death could be expected to follow as a *natural consequence* of the particular offense."[68] The district court issued a supplemental opinion explaining that this language "was intended to increase the government's burden by highlighting for the jury the need for there to exist a genuine nexus between the Defendants' conduct and the victim's death."[69] The court concluded, "if proximate cause is an essential element for a jury to find as the basis for an enhanced penalty, requiring the government to prove a 'real and meaningful' relationship between the wrongful conduct actions and the fatal outcome is a necessary safeguard for Defendants' rights."[70]

---

[65] 18 U.S.C. § 2261A.

[66] 18 U.S.C. §§ 2261, 2261A.

[67] 18 U.S.C. § 2261(b)(1)–(3).

[68] *Gonzalez*, 905 F.3d at 187 (emphasis added).

[69] *United States v. Matusiewicz*, 165 F. Supp. 3d 166, 170 (D. Del. 2015), *aff'd sub nom. United States v. Gonzalez*, 905 F.3d 165 (3d Cir. 2018) (citing 1 W. LaFave, Substantive Criminal Law § 6.4(a) p. 472 (2d ed. 2003)).

[70] *Matusiewicz*, 165 F. Supp. 3d at 170.

The Third Circuit affirmed. It found that, in crafting a jury instruction that required both actual and proximate cause, "[t]he District Court properly followed *Burrage* and *Paroline*."[71] The Third Circuit held that it was to the benefit of the defendant that the instruction "required even a more stringent finding than that discussed by the Supreme Court in *Paroline*."[72] The Third Circuit observed that the instruction not only required the jury to find that the victim's "death was a reasonably foreseeable result of the particular offense"—a more "traditional[ ]" proximate cause requirement—but the instruction went further by "requiring that the death result from the offense 'in a real and meaningful way' and as a 'natural consequence.'"[73] Because such language offered "*more* protection for the defendants' rights than necessary under Supreme Court precedent," the instruction "was certainly not plain error."[74]

## ii. Controlled Substances Act – 18 U.S.C. § 841(b)(1)(C)

The Third Circuit has not imposed a proximate-cause requirement with respect to every "death results" enhancement provision. In *United States v. Robinson*,[75] a decision that predated *Burrage* and *Paroline*, the Third Circuit held that the plain language of § 841(b)(1)(C) of the Controlled Substances Act—which imposed sentence enhancements when death "results from" the distribution of certain drugs—"neither requires nor indicates that a district court must find that death resulting from the use of a drug distributed by a defendant was a reasonably foreseeable event."[76] The Third Circuit held that the provision "puts drug dealers and users on

---

[71] *Gonzalez*, 905 F.3d at 189.

[72] *Id.* at 189–90.

[73] *Id.* at 190.

[74] *Id.* (emphasis added).

[75] *United States v. Robinson*, 167 F.3d 824 (3d Cir. 1999).

[76] *Id.* at 830 (citing *United States v. Patterson*, 38 F.3d 139 (4th Cir. 1994)).

clear notice that their sentences will be enhanced if people die from using the drugs they distribute," and Congress' intent in enacting the statute was to recognize the "risk . . . inherent in the product[.]"[77] Even after *Burrage* and *Paroline*, recent Third Circuit decisions concerning the enhancement provisions of the Controlled Substances Act have continued to follow *Robinson*.[78]

Critically, however, the Controlled Substances Act does not include any explicit references to "actual" or "proximate" causation in relation to its sentence enhancements. Courts have therefore been tasked with identifying a causation standard solely based on "results"-based language. This stands to reason, as under *Burrage* and *Paroline*, courts retain discretion to hold that such provisions require only but-for causation—*i.e.*, the minimum requirement set by the Supreme Court. But the Third Circuit's decision in *Robinson* and its progeny cannot be said to foreclose imposing a proximate causation requirement in a statute like § 844(i), which, as in *Paroline*, does contain an explicit "proximate" textual clue.

### C. Persuasive Authority from Other Circuit Courts

Courts have routinely distinguished between statutes that include "proximate" textual cues and those that do not. For example, in *United States v. Webb*, the Eleventh Circuit endorsed the reasoning of the Third Circuit in *Robinson* (and other circuits), concluding that Congress, by including only "results in" language without more, "did not insert a foreseeability or proximate cause requirement" into the Controlled Substances Act.[79] But in so ruling, the Eleventh Circuit

---

[77] *Robinson*, 167 F.3d at 830–31 (citing *Patterson*, 38 F.3d at 145).

[78] *See, e.g.*, *United States v. Jacobs*, 21 F.4th 106 (3d Cir. 2021) (applying *Robinson* to find that there is no proximate cause requirement when evaluating whether "death resulted" from the sale of heroin containing fentanyl); *United States v. Semler*, 858 F. App'x 533, 542–43 (3d Cir. 2021) ("[U]nder *Robinson*, but-for causation is all that is required," notwithstanding *Burrage*, which "did not reach the question of whether Section 841(b)(1)(C) also requires a showing of proximate causation."); *United States v. O'Brien*, 738 F. App'x 38 (3d Cir. 2018) (same).

[79] *United States v. Webb*, 655 F.3d 1238, 1255–56 (11th Cir. 2011).

found "[t]he lack of foreseeability or proximate cause language" in the drug distribution statutes to be "telling because Congress has included such language in numerous other criminal statutes, including statutes where the required connection is between the defendant's offense conduct and death or bodily injury."[80] As relevant here, the Eleventh Circuit cited a collection of analogous provisions with "proximate" textual cues—including arson in violation of § 844(i)—as alternative examples of Congress affirmatively choosing to insert "proximate" language as a limitation to exposure.[81]

The Fifth and Sixth Circuits have issued rulings specifically as to § 844(i) but have split on the foreseeability question.[82] In *United States v. Severns*, the Fifth Circuit considered whether there was sufficient evidence presented at trial to support the jury's verdict that an arsonist's conduct resulted in a firefighter's reaggravation of a prior back injury, which counted as a

---

[80] *Id.* at 1256

[81] *Id.* (also referencing 18 U.S.C. §§ 247(d)(2), (3), containing enhancements for bodily injury or death, "including any public safety officer performing duties as a direct or proximate result of conduct" involving damages to religious property or obstructing free exercise; § 844(d), containing identical enhancements for importation, manufacture, or distribution of explosive materials; §§ 2248(b)(3)(F), 2259(b)(3)(F), 2264(b)(3)(F), 2327(b)(3), mandating restitution of losses "suffered by the victim as a proximate result of the offense"; as well as various other analogous provisions: § 3286(b) (terrorism); § 3663A(a)(2) (restitution); § 3771(e) (defining "crime victim" as "person directly and proximately harmed"); and §§ 38(b)(2), (3) (fraud related to aircraft parts)).

[82] Other circuit court decisions that have addressed the federal arson statute are less informative. For example, before 1994, § 844 cross-referenced 18 U.S.C. § 34, a catchall provision that permitted life sentences or the death penalty for *any* crime in that chapter "which has resulted in the death of any person." Congress removed the cross-reference to § 34 in 1994. *See United States v. Gullett*, 75 F.3d 941 (4th Cir. 1996). Then, in 2000, the Supreme Court decided *Jones v. United States*, 529 U.S. 848 (2000), which narrowed the circumstances in which a building could be found to affect interstate commerce under § 844(i)—an element which is not at issue here. *See Russell v. United States*, 471 U.S. 858 (1985) (undisturbed holding that § 844(i) can be constitutionally applied to a rented apartment building).

Therefore, there are good reasons not to consider, for example, the Eighth Circuit decision in *United States v. Ryan*, 9 F.3d 660 (8th Cir. 1993), which analyzed causation under § 844(i) in the government's favor, but (a) interpreted the previous version of the statute, (b) was later reversed in part on rehearing en banc, and (c) was vacated entirely on interstate grounds pursuant to the defendant's § 2255 petition after *Jones*, all of which occurred before the Supreme Court's later decisions in *Burrage* and *Paroline* that shifted the causation landscape.

"personal injury" under § 844(i).[83] The defendant argued that the government "had the burden of showing that it was *foreseeable* that a firefighter wearing his normal breathing equipment in the course of fighting the fire would somehow be injured by wearing that equipment at this fire."[84] The Fifth Circuit rejected the argument, holding that a foreseeability requirement conflicts with the plain text of § 844(i). It found it sufficient that: (a) the injured firefighter "testif[ed] that [his back injury] occurred as a result of his firefighting activities and that the equipment on his back exacerbated the pain;" and (b) "[h]is injury was a direct and proximate result of the arson."[85] In other words, the Fifth Circuit declined to interpret the statute's use of the word "proximate" as injecting a foreseeability element, although it did read the "direct and proximate result" language as modifying "death."

By contrast, in *United States v. Pritchard*,[86] the Sixth Circuit found that § 844(i) does contain a foreseeability requirement, with substantial and persuasive analysis in support of its conclusion. In addressing the question of "when, exactly, death is 'a direct or proximate result' of arson," the Sixth Circuit explained that "[c]ourts traditionally answer questions of causation by looking to the common law," and in support, it cited the Supreme Court's language in *Burrage* which recognized the long-held "hybrid concept" of causation "consisting of two constituent parts: actual cause and legal cause."[87]

The Sixth Circuit commented in a footnote that the language of "direct *or* proximate" in

---

[83] *United States v. Severns*, 559 F.3d 274, 281–82 (5th Cir. 2009).

[84] *Id.* (emphasis added) (quotation marks omitted).

[85] *Id.*

[86] *United States v. Pritchard*, 964 F.3d 513 (6th Cir. 2020).

[87] *Id.* at 519 (quoting *Burrage*, 571 U.S. at 210) (quotation marks and second-order citation omitted).

§ 844(i)—*i.e.*, "the text's use of both types of causation in the alternative"—suggested "that they each have a different meaning or add something unique to the legal analysis."[88] The Sixth Circuit found it most plausible, without deciding, that the use of "or" means liability is permitted under § 844(i) "for *either* direct *or* proximate causation."[89] However, the Sixth Circuit did not reach the issue of whether "direct . . . result" is in fact synonymous with common-law conceptions of actual, but-for causation, because the court determined that the case could be resolved solely on proximate-cause grounds.[90]

Regarding the proximate-causation prong, the Sixth Circuit explained in *Pritchard* that, "[w]hile proximate cause lacks a 'precise definition,' proximate cause language generally 'injects a foreseeability element into the statute.'"[91] It noted that proximate cause typically "presents a narrower range of liability than an actual, or direct, cause," because courts have sought to impose *some* limit on an actor's responsibility for the consequences of his actions.[92] Indeed, the court observed, "the causes of an event go back to the dawn of human events and beyond," and "any attempt to impose responsibility upon such a basis would result in infinite liability for all wrongful acts."[93] Thus, the *Pritchard* court drew upon analogous precedent in that circuit to find that proximate causation under § 844(i) is met "when a person suffers harm

---

[88] *Pritchard*, 964 F.3d at 519 n.1 (emphasis added).

[89] *Id.* (emphasis added).

[90] *Id.* at 519.

[91] *Id.* at 520 (quoting *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Oregon*, 515 U.S. 687, 713 (1995) (O'Connor, J., concurring)).

[92] *Pritchard*, 964 F.3d at 520.

[93] *Id.* (quoting W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 41 p. 264 (5th ed. 1984)) (quotation marks omitted); *see also Pritchard*, 964 F.3d at 516 ("Every fledgling law student knows that 'a kingdom might be lost all for the want of a horseshoe nail,' . . . but we still don't hold the blacksmith responsible for the defeat despite his faulty craftmanship's role as the but-for cause." (quoting *Massachusetts v. EPA*, 549 U.S. 497, 546 (2007) (Roberts, C.J., dissenting)).

from events that are *foreseeable* and *naturally result* from the defendant's criminal conduct."[94]

Having concluded that § 844(i) requires a showing of proximate cause, and having defined proximate cause as requiring that a death be a foreseeable and natural result of the defendant's conduct, the Sixth Circuit then evaluated whether a firefighter's terminal heart attack while fighting a fire was a foreseeable and natural result of the defendant's arson. Although the court acknowledged that a heart attack was different from "typical injuries sustained during firefighting, such as burns and trauma from falling debris"—and although it was relevant that the deceased firefighter had a pre-existing heart condition with only "spotty use of his prescription medicine"—the court noted that the government introduced testimony at trial showing how firefighting can trigger a heart attack, therefore the jury had sufficient evidence to hold the defendant responsible for the firefighter's death.[95]

### D.  Determination of Causation Standard in § 844(i)

Based on the controlling precedent and persuasive decisions from other circuits discussed above, this Court concludes that Congress, by including the term "direct or proximate result" in 18 U.S.C. § 844(i), intended for the words "direct or proximate" to serve as a limitation to criminal defendants' exposure. The Court does not find persuasive the government's arguments that the wording of the statute conveys an intent by Congress for "direct or proximate result" merely to modify the reasons firefighters perform their duties. That interpretation has not been endorsed by any court and, as a practical matter, would not provide criminal defendants any meaningful protections from liability. Therefore, the Court finds that it is the government's

---

[94] *Pritchard*, 964 F.3d at 520 (emphasis added) (quotation marks, modifications, and citations omitted).

[95] *Id.* at 516, 520–22.

burden at trial to prove to the jury beyond a reasonable doubt, as an element of the charged offenses in Counts One and Two of the Superseding Indictment, that Lt. Williamson's death and the five other individuals' injuries were the "direct or proximate result" of Defendants' conduct.

Additionally, while the fact that Congress used the word "or" between the words "direct" and "proximate" could suggest an intent to provide two alternative avenues for establishing liability under the penalty enhancement provisions, the Court concludes that it is ambiguous whether Congress intended "direct . . . result" to be synonymous with common-law conceptions of actual, but-for causation.[96] The Court therefore applies the rule of lenity, which "requires interpreters to resolve ambiguity in criminal laws in favor of defendants,"[97] and determines that proximate causation (which, in this context, necessarily encompasses actual causation[98]) is the minimum showing required for the penalty enhancement provisions in § 844(i) to apply.

Moreover, considering that Congress included an explicit "proximate" textual clue in the statute, it would be flatly inconsistent with the *Burrage* and *Paroline* framework to permit the government to side-step the meaningful protections of a proximate-cause requirement by pursuing an alternative avenue solely under a less exacting but-for causation requirement. The "substantial factor" theory the government proposes has been interpreted by the Supreme Court to be a framework for establishing actual causation rather than proximate causation, and, at least in criminal cases, the Supreme Court has rejected that standard as insufficient and unworkable even with respect to actual causation given that, in the criminal context, uncertainties about the

---

[96] *See, e.g., Pritchard*, 964 F.3d at 530 (Clay, J., concurring) ("'Direct cause' is not another term for 'actual cause,' but is instead a synonym for 'proximate cause.'" (citing Black's Law Dictionary (11th ed. 2019)).

[97] *Whitman v. United States*, 574 U.S. 1003, 1005 (2014) (Scalia, J., statement respecting denial of certiorari).

[98] *Paroline*, 572 U.S. at 444 ("[T]o say one event proximately caused another is a way of making two separate but related assertions. First, it means the former event caused the latter. This is known as actual cause or cause in fact.").

parameters of a causation standard "cannot be squared with the beyond-a-reasonable-doubt standard applicable in criminal trials or with the need to express criminal laws in terms ordinary persons can comprehend."[99]

In sum, the Court holds as follows: First, the sentence enhancement provisions of § 844(i) require the government to submit to the jury and prove beyond a reasonable doubt both actual, but-for causation and proximate causation. Second, actual causation means the government must show that Defendants' conduct was an independently sufficient cause of Lt. Williamson's death and the other victims' injuries, or, if not an independently sufficient cause, that the death and injuries would not have occurred but for Defendants' conduct. Third, a showing of proximate cause under the sentence enhancement provisions of § 844(i) requires the jury to find that: (a) Lt. Williamson's death and the five other individuals' injuries were the reasonably foreseeable result of Defendants' conduct; (b) that the death and injuries could have been expected to follow as a natural consequence of Defendants' offenses; and (c) that the death and injuries resulted from Defendants' offenses in a real and meaningful way. The Court will instruct the jury accordingly.

### E.  Khalil's Motion to Dismiss

Defendant Khalil argues that Counts One and Two must be dismissed because the

---

[99] *Burrage*, 571 U.S. at 218. *Compare United States v. Crandon*, 173 F.3d 122 (3d Cir. 1999) (holding before *Burrage* and *Paroline* that proximate cause could be established in victim restitution context by showing that defendant's contacts with the victim were a "substantial factor in causing the ultimate loss") *with Paroline*, 572 U.S. at 445 ("Proximate cause is often explicated in terms of foreseeability or the scope of the risk created by the predicate conduct. . . . A requirement of proximate cause thus serves, *inter alia*, to preclude liability in situations where the causal link between conduct and result is so attenuated that the consequence is more aptly described as mere fortuity.") (citations omitted) *and Burrage*, 571 U.S. at 217–18 (observing that, "[t]aken literally, [the government's] 'contributing-cause' test would treat as a cause-in-fact every act or omission that makes a positive incremental contribution, however small, to a particular result;" moreover, even if such a test were to "exclude[] causes that are 'not important enough' or 'too insubstantial,'" the standard would be unworkable because "lower courts would be left to guess" at "how important or how substantial a cause must be to qualify") (citation omitted).

government has insufficiently alleged violations of § 844, as Lt. Williamson's death "was preventable, but for the actions and inactions of the PFD and L&I, and not the Defendant."[100] Khalil asserts that "it was not foreseeable that a firefighter would be sent into the previously condemned structure after the fire was extinguished, without proper equipment, and while the structure was on the verge of collapse—having been declared unfit for human habitation before the fire was even started."[101] These arguments are without merit.

Under the Supreme Court's framework, the Superseding Indictment must contain the necessary elements of the offenses charged, sufficiently apprise Khalil and Jaghama of the charges they must be prepared to meet, and provide enough detail for them to plead a former acquittal or conviction if they were to be prosecuted again.[102]

The Superseding Indictment—as returned by the grand jury with amended language after Khalil filed his Motion to Dismiss—adequately alleges facts supporting each of the required elements of § 844(i) and conspiracy thereof: (1) that Defendants conspired to and did use fire to damage the building at 300 West Indiana Avenue;[103] (2) that Defendants acted maliciously;[104] (3) that the property was used in or affected interstate commerce;[105] and (4) that first responders reported to the scene, the building collapsed, a firefighter died, and five others were injured, all

---

[100] Def.'s Mot. Dismiss ¶ 7 [Doc. No. 38].

[101] Def.'s Mot. Dismiss ¶ 6 [Doc. No. 38] (citing Ex. A [Doc. No. 38-1] (Notice of Violation as to 300 West Indiana Avenue)).

[102] *Huet*, 665 F.3d at 595.

[103] Superseding Indictment at 4 [Doc. No. 62].

[104] *Id.* at 1–5 (describing insurance-fraud motive and planning as part of the scheme).

[105] *Id.* at 1–2 (describing mixed-use property with a business on the ground floor and tenants who paid rent on the second and third floors).

as a direct or proximate result of Defendants' violative conduct.[106]

Khalil's objections as to the foreseeability of the building's collapse and the decisions the firefighters made as they were fighting the fire are factual disputes that have no bearing on whether the Superseding Indictment is adequately pleaded on its face. The Court must accept all facts alleged in the Superseding Indictment as true. Together with the common-sense proposition that buildings which are set ablaze are at risk of collapse,[107] the Superseding Indictment is adequate on its face. Khalil's Motion to Dismiss Counts One and Two will therefore be denied.

### F.  Government's Motion in Limine

In its Motion in Limine, the government seeks to bar all evidence, testimony, and arguments that Lt. Williamson's death and the five others' injuries after the fire at 300 West Indiana Avenue were unforeseeable, including any suggestions that the building had structural issues, that the firefighters who reported to the scene lacked the proper equipment, or that the first responders disobeyed orders or made improper decisions.[108] Based on the limited record presently before the Court, the government's arguments for wholesale exclusions are too broad.

Given the Court's ruling that § 844(i) imposes a proximate-cause requirement which incorporates principles of foreseeability, the Court will not foreclose Defendants from presenting any evidence at all on that issue. Similarly, it would be premature for this Court to exclude all evidence or testimony about the building's allegedly pre-existing structural defects, the firefighters' conduct on the evening of the fire, or other evidence related to the foreseeability of

---

[106] *Id.* at 4–5, 6 (stating that first responders arrived to fight the fire, the building collapsed, and death and injuries resulted).

[107] *See Pritchard*, 964 F.3d at 520 (describing "typical injuries sustained during firefighting, such as burns and trauma from falling debris").

[108] Gov't Mot. Lim. to Exclude Improper Defenses at 6 [Doc. No. 71].

Lt. Williamson's death and the others' injuries. The Court's obligations under Rules 402 and 403 of the Federal Rules of Evidence require a more particularized analysis to evaluate the relevance of that evidence and to weigh its probative value against the potential risk of prejudice. Accordingly, the government's Motion in Limine will be denied without prejudice to the government filing a renewed motion before trial or raising appropriate objections during trial as to specific evidence Defendants seek to introduce.

## IV.    CONCLUSION

For the above-stated reasons, Defendant Khalil's Motion to Dismiss and the government's Motion in Limine will be denied. The Court will instruct the jury in accordance with its ruling herein regarding the applicable causation standard for the sentence enhancement provisions of 18 U.S.C. § 844(i). The Court will consider further arguments from the parties with respect to Defendants' specific proposed testimony or evidence relating to foreseeability issues at the appropriate time. An order follows.